### SESNAN v. COTTON TRADE WAREHOUSE, Inc., et al.
### No. 16238.

Court of Appeal of Louisiana. Orleans.
Jan. 13, 1936.

John B. Jouandot and J. Bernard Cocke, both of New Orleans, for appellant.

Rosen, Kammer, Wolff & Farrar, of New Orleans, for appellees.

WESTERFIELD, Judge.

This is a suit for compensation at the rate of $15.84 per week for 125 weeks. The defendants, plaintiff's employer, and its insurance carrier, admit liability for the number of weeks claimed, but contend that the rate of compensation should be for the minimum of $3 per week instead of $15.84, as claimed by plaintiff.

There was judgment below for $3 per week for 125 weeks subject to a credit of $65, previously paid plaintiff, and plaintiff has appealed.

The plaintiff, Francis Sesnan, was employed by the defendant, the Cotton Trade Warehouse, Inc., which operates a cotton compress, as a "sew-boy," his compensation being 55 cents for each 100 bales of cotton compressed by the crew of which he was a member. The contention of plaintiff's counsel is that in determining the daily rate of pay of a piece worker such as plaintiff was, we should be guided by the amount which he might have earned had he been regularly employed, rather than any figure obtained by averaging what he actually earned during any given period of time. The record shows that the cotton compress of defendant, working at capacity, was capable of handling 80 bales an hour, or 640 bales, in a day of eight hours, therefore, counsel contends that at the rate of 55 cents per 100 bales, Sesnan could earn $3.52 a day, which, when multiplied by six, the number of working days in a week, would give the figure $21.12, as a weekly wage, and 65 per cent. of this amount would be $13.73 (not $15.84 as claimed in the petition).

On the other hand, there is a statement in the record showing the number of bales compressed per week during each of the years 1932, 1933, and 1934, the years just preceding plaintiff's injury which gives the weekly earnings of Sesnan during that period, an average of which is $3.18 per week, therefore, opposing counsel argues that

plaintiff's compensation should be figured at 65 per cent. of this amount, which would bring it below the minimum of $3 as fixed in the compensation statute.

In the case of Rylander v. T. Smith & Son, 177 La. 716, 149 So. 434, it was held that since the adoption of Acts No. 216 of 1924 and No. 242 of 1928 the compensation to be paid an injured employee should not be based upon the average weekly wages, but upon his daily rate of pay, and, it having been established in that case that Rylander earned 65 cents an hour when he worked, his compensation was figured as 65 per cent. of $31.20 which represented his weekly earning capacity, figuring 6 days to a week and eight hours to a day. In the instant case, however, we have no hourly or daily rate of pay, Sesnan's compensation was based upon the number of bales of cotton compressed by the crew of which he was a member, a situation which, as was stated by the Supreme Court in Calhoon v. Meridian Lumber Co., 180 La. 343, 156 So. 412, 415, is not specifically covered by the Compensation Act. In that case, as in this case, there was no daily rate of pay, Calhoon's compensation being determined by the number of feet of logs cut in a day. The court, however, recognized that the piece worker was entitled to compensation under the law because "the act never intended to exclude such a workman from the protection of its provisions," and proceeded to determine the compensation due Calhoon by taking the figure $1.92, the average daily earnings of the plaintiff over some period not stated, but evidently deemed sufficient to properly reflect the average earnings and multiplying it by 6, the working days in a week, and arriving at the figure $11.52 as Calhoon's weekly wage, of which 65 per cent., or $7.48, was awarded as compensation.

This method of computing compensation is criticized by counsel as unfair and not in accord with other holdings of the court, particularly Jones v. Southern Advance Bag & Paper Co. (La.App.) 157 So. 754, 755, where it was stated: "It is not the amount of wages actually earned by and paid to a workman that necessarily governs the measure of compensation he is entitled to when injured, but the amount he would have earned had he labored regularly."

It is contended that the three-year period which is covered by the figures submitted by defendant show an unusually low state of the cotton business which, due to adverse economic conditions, does not truly reflect the normal activities of the cotton compress business and that, therefore, the adoption of these figures as a basis for computing plaintiff's compensation would work to his disadvantage. Our attention is called to the fact that for a short time just after plaintiff was injured his employer voluntarily paid him compensation at the rate of $6.50 a week. We do not know why or how this amount of compensation was considered to be due plaintiff, as there is nothing in the record which would explain it. It may be, as counsel suggests, that during the particular three years covered by defendant's figures the cotton press business was subnormal, but it seems to us that the period covered is long enough to reflect actual conditions which, if abnormal, are likely to be permanent, and therefore truly reflect the situation at the time of plaintiff's accident, but the statement, in its present form, is not comprehensive enough; it does not give the essential figure in the equation. For example, we have before us the average weekly pay of the plaintiff during January, 1932, given as $14.78 and the average weekly pay in January, 1933, as $3.42, and in January, 1934, as $1.72. There are a number of months which show the average weekly earnings of Sesnan as 76 cents, 72 cents, 60 cents, 53 cents, and 32 cents. It is quite apparent, therefore, that there must have been many days when there was no work at all. In order that we may apply the rule pointed out in the Calhoon Case it is necessary that we determine the average daily earnings of Sesnan and this can only be done by obtaining a statement of the earnings during the days that Sesnan actually worked during a sufficient length of time, not the average weekly earnings as given in the statement in the record. We believe the three-year period covered by the statement to be sufficient for that purpose. Under the circumstances, we have concluded to remand the case in order to permit proof of plaintiff's daily rate of pay.

For the reasons assigned, the judgment appealed from is annulled, avoided, and reversed, and it is now ordered that this case be remanded for further proceedings according to law, and not inconsistent with the views herein expressed.

Reversed and remanded.